DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court summary judgment in favor of Farmers Insurance Exchange (Farmers), defendant below and appellee herein.
 {¶ 2} Linda Blackwell, plaintiff below and appellant herein, raises the following assignment of error:
"THE TRIAL COURT ERRED IN GRANTING FARMERS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING THE PLAINTIFF'S MOTION FOR DECLARATORY RELIEF."
 {¶ 3} The parties do not dispute the underlying facts. In 1999, appellant obtained a homeowners insurance policy from Farmers. Farmers renewed her policy yearly from 1999 to 2003. On February 4, 2003, Farmers mailed appellant a renewal notice that contained a "renewal/due date" of March 29, 2003 and stated:
"Your policy will be renewed an additional twelve (12) month term only if payment of total premium or the optional payment indicated is made on or before the renewal date of this notice. Failure to make this payment will cause the policy to expire as of the renewal/due date."
 {¶ 4} Appellant did not pay the premium by March 29, 2003.
 {¶ 5} On April 10, 2003, Farmers sent appellant an "Important Expiration Notice," which stated:
"Although the due date has passed you can still accept the Company's offer to renew your policy. If payment is received within 15 days after the due date, your policy will renew without interruption of coverage. If payment is not received within 15 days, the policy will not renew, and coverage will have been terminated as of the due date."
 {¶ 6} Again, appellant did not make any payment to Farmers.
 {¶ 7} On April 20, 2003, a fire destroyed appellant's home. On April 22, 2003, appellant express mailed a check to Farmers for the premium payment. On April 24, 2003, appellant stopped payment on the check and visited the insurance agency to hand-deliver a check.
 {¶ 8} On April 25, 2003, Farmers mailed appellant a notice that stated: "Your policy was cancelled for non-payment of premium on the cancellation date shown above and as noted on the cancellation notice sent to you earlier."
 {¶ 9} On April 29, 2003, Farmers sent appellant a reinstatement notice that reinstated the policy effective April 24, 2003, the date the insurance agent received the premium payment. Appellant later sought coverage for the loss she suffered from the April 20, 2003 fire. Farmers denied her claim and asserted that her failure to pay the renewal premium caused the policy to lapse at the end of the term, March 29, 2003.
 {¶ 10} Subsequently, appellant filed a declaratory judgment action against Farmers and requested the court to declare that she had coverage on the date of the fire. Appellant asserted that Farmers canceled the policy without complying with Ohio statutory law or the policy terms and that the policy remained effective as of April 20, 2003. She also alleged breach of contract and good faith.
 {¶ 11} On July 1, 2004, appellant filed a "motion for declaratory relief." Appellant requested the court to declare that she was entitled to coverage under the Farmers policy because Farmers failed to properly cancel the policy, which resulted in the policy continuing to remain in effect on the date of her loss.
 {¶ 12} Farmers filed a summary judgment motion and asserted that: (1) appellant did not have a homeowners insurance policy with Farmers on the date of her loss because she failed to satisfy a condition precedent to the renewal of her policy by paying the renewal premium; (2) neither the cancellation provisions in the Farmers policy nor R.C. 3937.25 applies to a lapse in coverage for nonpayment of a renewal premium; and (3) even if the ten day notice provision in the cancellation provision applies to a lapse in coverage due to nonpayment of a renewal premium, the February 4, 2003 notice satisfied the provision's requirement.
 {¶ 13} Appellant later filed a supplemental brief and requested the court to consider a document that it had recently received in discovery from Countrywide. The document was some type of log that stated:
"I CLD FARMERS INSURANCE AND SPOKE WITH LAMAR WHO ADVISED THE POLICY CANCELED ON 6/11/03 — LAMAR ALSO PROVIDED CLAIM INFORMATION: ADJUSTER DALE KILDORE * * * — I CLD DALE — I ASKED I WAS TOLD BY FARMERS CLAIMS CENTRAL THAT THE POLICY CANCELLED 6/11/03 WHICH IS AFTER THE DOL OF 4/20/03 AND WHY CLAIM WAS DENIED — HE SAID PER COVERAGE SPECIALIST, CLINT WAISNER, THE POLICY CANCELED 3/29/03 — I CLD CLINT WAISNER — HE SAID POLICY CANCELED 3/29/03 — I ASKED WHY CLAIMS CENTRAL SAID POLICY CANCELED 6/11/03 — HE HAD NO ANSWER — I FILED CLAIM WITH HIM UNDER MORTGAGEE CLAUSE — HE CALLED ME BACK AND ASKED IF LOAN IS CURRENT — ADVISED YES IT IS — HE SAID CAN NOT FILE UNDER MORTGAGEE CLAUSE UNLESS THE FCL SALE HAS TAKEN PLACE BECAUSE THE BWR STILL HAS INTEREST — HE WILL FAX ME THE POLICY PROVISIONS * * *."
 {¶ 14} Farmers filed a motion to strike and argued that the document constituted unauthenticated hearsay and is not proper evidence within Civ.R. 56. The trial court did not rule on the motion.
 {¶ 15} On January 6, 2005, the trial court granted Farmers' summary judgment motion and denied appellant's summary judgment motion. The court determined that Farmers did not cancel the policy, but that appellant chose not to renew the policy by failing to pay the renewal premium. The court noted that the cancellation provisions apply only when Farmers decides not to renew a policy or decides to cancel an existing policy. The court further noted that Farmers offered to renew the policy if appellant paid the premium, and that when appellant did not pay the premium, she rejected the renewal offer. Thus, although Farmers' April 25, 2003 notice used the word "cancel" or "cancellation," the notice, in substance, advised appellant that her policy had expired and that she could reinstate the policy by paying the premium. Appellant timely appealed the trial court's judgment.
 {¶ 16} In her sole assignment of error, appellant asserts that the trial court erroneously granted Farmers' summary judgment motion and denied her summary judgment motion. She asserts that the trial court wrongly concluded that her homeowners policy was not effective on the date of her loss because Farmers did not properly cancel the policy as it failed to comply with the policy terms and with R.C. 3937.25. Appellant argues that Farmers failed to properly cancel the policy in the following respects: (1) both the insurance policy and R.C. 3937.25 required Farmers to send appellant a cancellation notice, not just a premium notice, ten days before the cancellation; and (2) Farmers did not send appellant a written cancellation notice that contained, at a minimum, the date of cancellation and an explanation for the cancellation at least ten days before canceling her policy. Appellant argues that none of the notices, except the April 25, 2003 notice, complied with the policy terms or with R.C. 3937.25. Thus, appellant argues that Farmers' cancellation was ineffective, the policy remained effective as of the date of her loss.
 {¶ 17} Appellant disagrees with the trial court's determination that her policy lapsed for nonpayment of premium. She asserts: "Farmers treated this situation like a cancellation by sending [appellant] a cancellation notice, not merely a lapse notice. [The April 25, 2003 notice] contains a `cancellation date,' not a lapse date, and uses the terms `canceled' or `cancellation' several times. It does not use the term `lapse' anywhere. * * * *" Appellant further argues that Ohio law does not distinguish between "cancellation" and "lapse." She additionally contends that because Farmers paid the claim that Countrywide Home Loans, the mortgagee, submitted, it implicitly admitted that the policy remained in effect on the date of her loss. Appellant notes that the Mortgage Clause states:
"If we deny your claim, such denial will not apply to a mortgagee's valid claim if the mortgagee:
a. knows and notifies us of any change in ownership, occupancy or substantial change in risk.
b. pays on demand any premium due if you have failed to do so.
c. submits a signed, sworn statement of loss within 60 days after we notify the mortgagee of your failure to do so. * * *
We will give the mortgagee 10 days notice before cancelling this policy."
 {¶ 18} Appellant speculates that Farmers paid Countrywide because it failed to give Countrywide ten days notice before it cancelled the policy.
 {¶ 19} Appellant further asserts that Farmers' policy is ambiguous concerning whether the cancellation provision applies to non-renewals for nonpayment of the premium. She argues that the cancellation provision does not distinguish between types of premiums. She thus contends that we must liberally construe the cancellation provision of Farmers' policy to mean that it applies to lapses in coverage for nonpayment of a renewal premium, as well as traditional cancellations for nonpayment during the policy period.
 {¶ 20} Farmers essentially asserts that appellant bases her argument upon the flawed premises that it canceled her policy and that R.C. 3937.25
applies. Farmers contends that appellant, by failing to pay the renewal premium when due, failed to satisfy a condition precedent to renewing her policy before the end of the policy period. Farmers argues that when appellant failed to pay the renewal premium, her policy terminated. Farmers notes that the declarations page states that the policy period is from March 29, 2002 to March 29, 2003. The policy states that it "will continue for successive policy periods, if: (1) We elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our premiums, rules and forms then in effect." Additionally, Farmers argues that R.C. 3937.25 does not apply to homeowners insurance policies.
 {¶ 21} Farmers recognizes that it paid Countrywide for the loss, but asserts that its payment to Countrywide is not an admission that Farmers improperly canceled the policy.
 {¶ 22} Initially, we note that when reviewing a trial court's decision regarding a summary judgment motion, an appellate court conducts a de novo review. See, e.g., Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brownv. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711,622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12,599 N.E.2d 786. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 23} Civ.R. 56(C) provides, in relevant part, as follows:
* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 24} Thus, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 25} An insurance policy is a contract. Westfield Ins. Co. v.Galatis 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. Our role in interpreting a contract is to give effect to the contracting parties' intent. Id. at ¶ 11. In doing so, we must examine the insurance contract as a whole and presume that the language used in the policy reflects the parties' intent. Id., citing Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus. When the words used are clear, we "may look no further than the writing itself to find the intent of the parties." Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. Id.
 {¶ 26} When a contract is ambiguous we may consider extrinsic evidence to ascertain the parties' intent. Id. at ¶ 12, citing Shifrin v. ForestCity Enterprises, Inc. (1992), 64 Ohio St.3d 635, 597 N.E.2d 499. We may not, however, "alter a lawful contract by imputing an intent contrary to that" the parties expressed. Id. Generally, the fact finder must resolve ambiguity in a written contract. Id. at ¶ 13. When the contract is "standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Id. Because in the insurance context the insurer customarily drafts the contract, courts ordinarily construe ambiguity in an insurance contract against the insurer and in favor of the insured. Id., citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.
 {¶ 27} In the case sub judice, we first look to the policy language to determine whether the contract is ambiguous. The declarations page lists the policy period as March 29, 2002 to March 29, 2003 and states: "This policy will continue for successive policy periods if: (1) we elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our premiums, rules and forms then in effect." This language is not ambiguous. The language clearly informs the insured that the policy will renew for an additional period if the insured pays the renewal premium. The implied premise is that the policy will not renew if the insured fails to pay the renewal premium.
 {¶ 28} We note that the Farmers' policy does not explicitly impose upon it any obligations when a policy does not renew because the insured failed to pay the renewal premium. Its policy contains both a cancellation provision and a non-renewal provision. The cancellation provision states:
"We may cancel this policy by mailing or delivering written notice to you, or your representative. Such notice will be mailed or delivered to the last address known to us. The mailing of it will be sufficient proof of notice."
 {¶ 29} The policy states that Farmers may cancel the policy "only for the following reasons: (1) Non-payment of premium, whether payable to us or our agent. We may cancel at any time by notifying you at least 10 days before the date cancellation takes effect."
 {¶ 30} The non-renewal provision states:
"We may elect:
a. not to renew this policy; or
b. to condition its renewal on a reduction of limits or a reduction or elimination of coverages.
We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. The mailing of it will be sufficient proof of notice."
 {¶ 31} To decide whether the cancellation provision applies when the insured fails to pay the renewal premium due by the end of the policy expiration date, we must consider whether the plain, ordinary meaning of the words "cancel" and "cancellation" includes a non-renewal. Black's Law Dictionary (6Ed. 1990) defines "cancel" as follows: "To obliterate; to strike or cross out. To destroy the effect of an instrument by defacing, obliterating, expunging, or erasing it. To revoke or recall; to annul or destroy, make void or invalid, or set aside. To rescind; abandon; repeal; surrender; waive; terminate. The term is sometimes equivalent to `discharge' or `pay.'" Id. at 206. It defines "cancellation" as follows: "To destroy the force, effectiveness, or validity of. To annul, abrogate, or terminate. * * * As used in insurance law, term refers to the termination of an insurance policy by an act of either or both of the parties to it, prior to the ending of the policy period." Id.
 {¶ 32} Employing the plain meaning of "cancellation," we do not believe that it carries the same meaning as non-renewal in this situation. Thus, Farmers' cancellation provision does not apply when the policy expires due to the insured's failure to pay the renewal premium. Neither appellant nor Farmers acted before the policy period ended so as to terminate the policy. Instead, appellant failed to act, which caused the policy to end. Neither she nor Farmers affirmatively sought to terminate the policy before the policy period ended. Thus, what resulted was not a cancellation subject to the cancellation provisions.
 {¶ 33} Contrary to appellant's argument, simply because Farmers labeled her policy as "canceled" in the April 25, 2003 notice does not mean that it "canceled" the policy so as to require it to comply with its policy's cancellation provisions. It is well-settled that courts do not decide the legal effect of a written instrument based upon the label the parties attach to it, but instead must examine the language used to determine the legal effect. See Worth v. Aetna Cas. Sur. Co. (1987),32 Ohio St.3d 238, 241, 513 N.E.2d 253 (stating that "the nature of a given provision is determined not by the label the parties give it, but rather by the legal effect of the provision as expressed by the parties in their agreement").
 {¶ 34} Appellant has not argued that Farmers failed to comply with the non-renewal provision. We have included it in our discussion simply to note that the policy distinguishes between a cancellation and a non-renewal.
 {¶ 35} Furthermore, contrary to appellant's argument, R.C. 3937.25
does not govern the case at bar. By its terms, the statute applies to "a policy of commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds, medical malpractice insurance, and automobile insurance." See R.C.3937.25(B). The statute reads:
"(B) After a policy of commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds, medical malpractice insurance, and automobile insurance as defined in section 3937.30 of the Revised Code, has been in effect for more than ninety days, a notice of cancellation for such policy shall not be issued by any licensed insurer unless it is based on one of the following grounds:
(1) Nonpayment of premium; * * *
(C) The notice of cancellation required by this section must be in writing, be mailed to the insured at the insured's last known address, and contain all of the following:
(1) The policy number;
(2) The date of the notice;
(3) The effective date of the cancellation;
(4) An explanation of the reason for cancellation.
Such notice of cancellation also shall be mailed to the insured's agent.
(D) Except for nonpayment of premium, the effective date of cancellation must be no less than thirty days from the date of mailing the notice. When cancellation is for nonpayment of premium, the effective date of cancellation must be no less than ten days from the date of mailing the notice.
 {¶ 36} Thus, by its terms the statute does not apply to homeowners insurance policies. Neither party has cited a statute that applies to a non-renewal of a homeowners policy due to nonpayment of premium and our research has not revealed one. Thus, in the absence of statutory guidance, we apply Ohio common law.
 {¶ 37} Under Ohio common law, an insurer has no duty to notify the insured when the insurance policy has lapsed due to nonpayment of the renewal premium. See Morey v. Educator Executive Insurers, Inc.
(1976), 45 Ohio St.2d 196, 342 N.E.2d 691, overruled in DeBose v.Travelers Ins. Co. (1983), 6 Ohio St.3d 65, 451 N.E.2d 753. "`In the absence of contract, statute, or course of dealing so requiring, no notice of lapse of the policy for non-payment of premium is necessary.'"Mink v. Economy Fire and Cas. Co. (Aug. 10, 1982), Franklin App. No. 82AP-317, quoting 6 Couch on Insurance 2d, Sec. 32.92.
 {¶ 38} In Morey, the court held: "Where an automobile liability insurance policy has lapsed and terminated for nonpayment of the renewal premium, R.C. 3937.30 through 3937.39 do not require the insurance company which issued that insurance policy to send a notice of cancellation to the policyholder." Id. at paragraph two of the syllabus. In Morey, the insurer sent two separate renewal notices to its insured that the premium was due March 1, 1973. Each notice stated that the policy would expire if the premium was not paid by the due date and that the policy would extend for six months if the insured paid the premium. The insured did not pay the premium by the due date. On March 17, 1973, the insured was in an automobile accident. On March 18, 1973, the insured called his insurer to report the accident. He asked whether his policy was still in force because of the overdue premium. The insurer told him that the policy had been canceled. He nonetheless mailed a check for the past due premium, which the insurer received March 20, 1973. The company accepted the payment and reinstated the policy from March 20, 1973 to September 20, 1973. The insured claimed that the insurer's failure to mail a cancellation notice pursuant to R.C. 3937.32 and its acceptance of the March 20, 1973 premium payment renewed the policy as of March 1, 1973. The insurer denied coverage.
 {¶ 39} On appeal, the Ohio Supreme Court held that "[t]he statutory requirement of notice of cancellation, contained in R.C. 3937.32, does not require notice to terminate coverage where a policy has `lapsed.' `Cancellation' is a term of precise definition, and refers to the termination of a policy by act of either or both of the parties to it, prior to the ending of the policy period. The term `lapse,' on the other hand, refers to the termination of a policy because its policy period has expired." Id. at 199-99. The court reasoned that R.C. 3937.32 requires a notice of cancellation "only when the company terminates coverage under an insurance policy prior to the expiration of the term for which it was written, and then for one of the reasons enumerated in R.C. 3937.31." Id. at 199.
 {¶ 40} In Debose, the court overruled Morey's holding that the insurer need not send a cancellation notice before terminating an automobile insurance policy for nonpayment of the premium. The court held: "In order to terminate an automobile insurance policy for nonpayment of premiums and within the mandatory renewal period set forth in R.C. 3937.31, the issuer of the policy must send, pursuant to R.C. 3937.30 et seq., a notice of cancellation to the policyholder." Id. at syllabus.
 {¶ 41} In reaching its decision, the court relied upon former R.C.3937.31, which required every automobile policy to be issued for not less than a two-year policy period or guaranteed renewable for successive policy periods totaling not less than two years. The statute read:
"Where renewal is mandatory, `cancellation,' as used in sections 3937.30
to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code, and for one or more of the following reasons: * *
(3) Nonpayment of premium, which means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premiums, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit."
 {¶ 42} The court further observed that "R.C. 3937.31(A) designates as a `cancellation' any refusal to renew a policy with all of its initial coverages and limits, and that "the statute expressly provides that the termination of a policy * * * within the mandatory renewal period and for nonpayment of premiums is a cancellation which may only be properly effected through compliance with, inter alia, the notice requirement of R.C. 3937.30 et seq."
 {¶ 43} The court stated that Morey's "distinction between lapses and cancellations may be germane to common-law analyses of insurance policy terminations," but the General Assembly "has statutorily defined `cancellation' to include such lapses as occur when an insurer refuses to renew a policy. We are thus constrained to attribute that meaning to cancellation, at least in the context of R.C. 39037.30 et seq., which the General Assembly has so ascribed." Id. The court noted that when "`a statute defines terms used therein which are applicable to the subject matter by the legislation, such definition controls in the application of the statute * * *.'" Id., quoting Woman's Bowling Congress v.Porterfield (1971), 25 Ohio St.2d 271, 267 N.E.2d 781, paragraph two of the syllabus.
 {¶ 44} In the case sub judice, we do not believe that DeBose applies. Instead, we apply Morey's common law distinction between "cancellation" and "lapse." The DeBose court explicitly recognized that its holding is based upon the language used in the automobile liability insurance policy cancellation statute provisions, which helped define "cancellation." By contrast, in the case at bar we have not discovered a statute that sets forth any specific requirements before a homeowners policy can expire for nonpayment of the renewal premium. The parties have not cited a statute that specifically defines "cancellation" as used in a homeowners policy. Thus, DeBose's holding and interpretation of the automobile liability insurance policy statutes does not apply to our interpretation of Farmers' homeowners insurance policy. Instead, we apply common law.
 {¶ 45} Our decision is consistent with Anca v. White (Sept. 26, 1988), Warren App. Nos. 88-01-5 and 88-03-25. In Anca, the trial court granted summary judgment in the insurance company's favor and concluded that it was not liable for loss sustained after a policy lapsed. The purported insured carried property insurance with Indiana Insurance Company that had a policy term of January 6, 1986 to January 6, 1987. In November of 1986, the insurer sent two notices that the premium was due. In December of 1986, the insurer sent two notices stating that the policy would not renew unless the insured paid the premium. The insured did not pay the premium. On February 9, 1987, a fire destroyed one of the insured's buildings.
 {¶ 46} On appeal, the court determined that the insurance coverage had lapsed due to nonpayment of the renewal premium. The court disagreed with the insured's argument that non-renewal was akin to cancellation. The court stated: "We find no distinction between the non-renewal and the lapse of appellants' policy. When appellants' policy was not renewed, the policy lapsed. Therefore, [the insurer] had no common law duty to notify appellants of the non-renewal."
 {¶ 47} In the case at bar, appellants' policy lapsed due to her nonpayment of the renewal premium. Because the policy lapsed, Farmers had no duty to comply with policy provisions regarding cancellation. Farmers had no duty to comply with R.C. 3937.25 because that statute does not apply to homeowners insurance policies.
 {¶ 48} Additionally, we disagree with appellant that Farmers' payment to Countrywide represents an admission that the policy remained effective on the date of her loss. Any number of reasons exist why Farmers paid Countrywide, and appellant's theory is speculation. Speculation is not sufficient to overcome a properly supported summary judgment motion. See, e.g., Vermett v. Fred Christen and Sons Co. (2000),138 Ohio App.3d 586, 613, 741 N.E.2d 954.
 {¶ 49} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the appeal be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion